UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 20-36-DLB

GREANEX, LLC, et al.                                                                                         PLAINTIFFS

v.                          **MEMORANDUM OPINION AND ORDER**

RAINER TRIEM, et al.                                                                                          DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

## I.   INTRODUCTION

This matter is before the Court on Defendant Rainer Triem's Motion to Dismiss Entry of Default (Doc. # 38), and Plaintiffs' Motion for Default Judgment. (Doc. # 42). Plaintiffs have responded to Defendant's Motion to Set Aside (Doc. # 40), and Defendant has neither replied in support of that Motion, nor responded in opposition to Plaintiff's Motion. The time for further briefing has passed, and both Motions are thus ripe for the Court's review. Accordingly, the Court has reviewed the filings, and for the reasons set forth herein, Defendant's Motion to Dismiss Entry of Default (Doc. # 38) is **denied**, and Plaintiffs' Motion for Default Judgment (Doc. # 42) is **granted**. Judgment will be entered in favor of Plaintiffs.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit stems from an allegedly fraudulent scheme involving interrelated corporate entities and associated individuals. Greanex, LLC, is a mining technology company that operates coal mining facilities in Harlan and Pike Counties, Kentucky. (Doc. # 1 ¶ 12). Greanex began as a joint venture between Plaintiffs and Defendants in

1

this lawsuit.  (*Id.* ¶ 1).    More specifically, Greanex is owned by Sotaco, LLC and Uniper Global Commodities, NA.  (*Id.*).  Sotaco, LLC is owned by Sotaco, Inc., Limited, which is owned by Sotaco, Inc., which is owned by Rainer Triem.[1]  (*Id.*).  Triem, Sotaco, LLC, and Sotaco, Inc., Limited are the Defendants in this suit.[2]  Uniper Global Commodities, NA, a North American entity, is associated with Uniper Global Commodities, SE, a German entity.[3]  (*Id.* ¶¶ 13-14).  Greanex and the Uniper entities are the Plaintiffs in this suit.  Greanex's original business function was "to develop and commercialize technology to sort and produce commercially usable coal from piles of waste coal for sale into the international coal markets."  (*Id.* ¶ 1).

In 2015, representatives of Uniper approached Triem about starting the Greanex venture.  (*Id.* ¶ 25).  Triem had marketed himself as an expert in the types of technologies needed to perform Greanex's objective, and he told the Uniper executives that he owned an "x-ray coal sorting machine" that would assist them in getting started.  (*Id.* ¶ 26).  In 2016, the Uniper representatives entered into an agreement with Triem and his company, Sotaco LLC, by which Greanex was established.  (*Id.* ¶ 27).  A major component of the deal was Triem and Sotaco's owning of the x-ray machine, but in reality, Triem and Sotaco did not own the machine.  (*Id.* ¶ 34).

Then, later in 2016, Uniper provided $1.6 million in "pre-payment coal purchase financing" to Greanex, to get the venture up and running.  (*Id.* ¶ 37).  The first payment

---

[1]   Because the Sotaco entities are Defendants in this suit and accordingly have the same legal interests, the Court will refer to both as "Sotaco" interchangeably here.

[2]   Sotaco, Inc., Limited's parent company, Sotaco, Inc., is not.

[3]   Because both Uniper entities are Plaintiffs in this suit and accordingly have the same legal interests, the Court will refer to both as "Uniper" interchangeably here.

made by Uniper to Greanex would be one of seven, later totaling almost $34 million.  (*Id.* ¶ 39).  According to Plaintiffs, these pre-payments were based on Triem's attestations that production volumes would substantially increase at production sites in Eastern Kentucky.  (*Id.* ¶¶ 42-43).  In 2018, Greanex hired two local contractors "at Triem's selection and direction" to install operations for coal sorting machines, x-ray machines, and other operations infrastructure at its two Eastern Kentucky production sites.  (*Id.* ¶¶ 45 and 50).  But according to Uniper and Greanex, work was never completed on either site despite Greanex having paid more than $500,000 in costs.  (*Id.* ¶ 49).  Uniper alleges that Triem and Sotaco received that money in kickback payments, as Triem had "a long association" with both contractors.  (*Id.* ¶¶ 45 n.4 and 51).  Triem later admitted that he would receive "a bit of commission" from the contractors for referring Greanex's business.  (*Id.* ¶ 57).  During all of this, Uniper continued to pre-pay Greanex for saleable coal that it did not receive.  (*Id.* ¶¶ 59-64).

In 2019, Uniper hired an independent investigator to look into Greanex's operations and uncovered that the company's output reports did not match its actual production outputs.  (*Id.* ¶¶ 65-66).  According to Uniper, its prepayments, which totaled more than $32 million, were based entirely on these false production reports from Triem.  (*Id*. ¶ 69).  After interviewing witnesses, Uniper learned that employees were instructed by Triem to report higher numbers than actual production outputs.  (*Id*. ¶ 70).  In September 2019, Greanex voted to remove Triem from the company's leadership, citing the fraud and that the company "had been systematically mismanaged and was struggling financially."  (*Id*. ¶¶ 82-83).

3

Greanex and Uniper filed this lawsuit against Triem and Sotaco in March 2020, alleging civil RICO violations, conspiracy to violate RICO, fraud, breach of fiduciary duty, conspiracy to breach fiduciary duty, conspiracy, unjust enrichment, and breach of contract.  (*See generally* Doc. # 1).  In the months that followed, Triem and Sotaco filed a series of Motions to Dismiss.  (*See* Docs. # 7, 13, and 14).  The Court denied those Motions in a Memorandum Opinion and Order dated March 31, 2021, and directed Sotaco, LLC to obtain counsel.  (Doc. # 31).  At that time, Triem and Sotaco, LLC had been served, but Sotaco, Inc. had not.  (*See id.*).  In April 2021, Plaintiffs filed a Motion seeking authorization to serve Sotaco, Inc. via email, at an address from which Plaintiffs' counsel had received messages from Rainer Triem.  (Doc. # 32).  The Court granted their Motion, allowing service of process via email under Rule 4(f)(1).  (Doc. # 33).  Plaintiffs filed an Affidavit showing service via email on Sotaco, Inc. to Triem's email address two days later.  (Doc. # 34).  Shortly thereafter, Triem filed a "Statement" referencing the Court's Order, seeming to argue that the Order directing service on Sotaco, Inc. via Triem's email address was improper.  (Doc. # 35).  Interestingly, that Order (Doc. # 33) was later returned via mail as undeliverable, which seems to show that Mr. Triem received the copy via email as shown in Plaintiffs' Affidavit.  (Doc. # 34).

None of the Defendants filed an Answer, and in May 2021, Plaintiffs moved for the Clerk's office to enter default judgment in their favor (Doc. # 36), and the Clerk entered default judgment one day later.  (Doc. # 37).  Triem filed his "Motion to Dismiss Entry of Default" shortly thereafter (Doc. # 38), and Plaintiffs filed a Response.  (Doc. # 40).  In July, Plaintiffs filed a Motion for Default Judgment under Rule 55, which now stands for the Court's review.  (Doc. # 42).

4

### III. ANALYSIS

#### A. Triem's Motion to Dismiss Entry of Default (Doc. # 38)

Triem has filed a "Motion to Dismiss Entry of Default." (Doc. # 38). In the Motion, Triem argues that Sotaco, Inc. and Sotaco, Inc. Limited are two different entities, and that Plaintiffs' counsel has confused the two. (*See id.*). Triem confirms in the Motion that while he is the CEO of Sotaco, Inc., that he is apparently no longer associated with Sotaco, Inc., Limited. (*Id.*). Thus, Triem argues, that service on Sotaco, Inc., Limited, was improper by his email address, r.triem@sotaco.com, as that email address is for Sotaco, Inc., and not Sotaco, Inc., Limited. (*Id.*). Lastly, Triem also posits that service has not been effectuated against Sotaco, Inc., Limited in accordance with the Hague Convention, which renders the company not yet served. Plaintiffs have responded to assert that service on Sotaco, Inc., Limited has been effectuated by their email to Triem. The Court agrees, and Triem's Motion will be **denied**.

A district court may set aside a default judgment under Rule 55(c) for good cause. Fed. R. Civ. P. 55(c). In interpreting "good cause," the Sixth Circuit has instructed trial courts to examine "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 839 (6th Cir. 2011) (internal quotations omitted). A brief look back at this case's procedural history makes clear that Triem's defense is not meritorious, and that there is not good cause for setting aside the entry of default.

Rule 4(f)(3) allows for service of process on international defendants "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). The Court previously ordered service on Sotaco, Inc., Limited via email, after

5

Plaintiffs' efforts to serve the company via the Hague Convention were unsuccessful. (Doc. # 33). While it is true that the Court referred to "Sotaco, Inc." in the Order, only Sotaco, Inc., Limited and Sotaco LLC are parties to this action – not Sotaco, Inc. (*See id.*). Thus, it seems apparent that any reference to "Sotaco, Inc." in this lawsuit would refer to Sotaco, Inc., Limited, instead of the only other Sotaco defendant, Sotaco LLC.

Furthermore, as the Court explained in its Order granting permission to effectuate service via email, the purpose of email service makes it "reasonably likely" that Sotaco, Inc., Limited would receive notice of the lawsuit. (Doc. # 33 at 2). Plaintiffs effectuated service of process to a Sotaco email address and to Triem's personal iCloud email address. (*See* Doc. # 34). The iCloud email address was previously used by Triem on a pleading filed on behalf of Sotaco, Inc. Limited. (Doc. # 14 at 2). Even if Triem is no longer responsible for Sotaco, Inc., Limited, as he states, the fact that he once was responsible for the entity, in addition to him remaining as the CEO of an entity with an identical name, makes apparent that the company had sufficient notice of a lawsuit being filed against it.

The Court has considered each of these points notwithstanding the most problematic fact for Triem -- that Sotaco, Inc., Limited previously filed a Motion to Dismiss in this lawsuit, which makes patently obvious that the entity has sufficient notice of the lawsuit's existence. (Doc. # 14). In short, Triem's attempts to evade service of process are not only disingenuous, but fall far short of warranting an order setting aside the Clerk's entry of default judgment against him and the Sotaco defendants. His Motion to Dismiss Entry of Default will thus be **denied**.

    **B.    Plaintiffs' Motion for Default Judgment (Doc. # 42)**

Plaintiffs have filed a Motion for Default Judgment under Rule 55(b)(2), seeking the entry of judgment against all Defendants. (Doc. # 42). Seeing that no Defendant has filed an Answer in the two years since this lawsuit's filing, and that no Defendant has objected to the pending motion, and for the reasons set forth herein, the Court grants Plaintiffs' Motion.

Rule 55(b)(2) allows the Court to conduct an evidentiary hearing to determine the amount of damages. Fed. R. Civ. P. 55(b)(2). However, whether to conduct a hearing is at the Court's discretion, so long as the Court "conduct[s] an inquiry in order to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (internal quotations omitted). In cases where damages are not liquidated, a default judgment only admits liability, and "the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). In the absence of a hearing, the district court can determine damages on default by examining affidavits from the plaintiff. *See Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 455 (6th Cir. 2011) (upholding district court's denial of default damages where plaintiff "claimed an enormous figure unsupported by the documentation he provided[.]").

Here, Plaintiffs have filed 36 exhibits in the record to support their damages claims against Defendants. (*See* Doc. # 42). The Uniper plaintiffs seek compensatory damages "comprised of the outstanding balance on amounts [Uniper] loaned as initial funding to Greanex" based on Triem's false attestations. (*Id.* at 10). Additionally, they seek reimbursement for fees paid to the external investigator, for the money Uniper paid for coal that it did not receive, and for unpaid service fees. (*Id.* at 11). Attachment # 1 to the

7

Motion is an Affidavit from Uniper's in-house counsel attesting to these amounts, and other exhibits filed in support of the Motion prove the contracts referenced in the Affidavit. (*See, e.g.,* Docs. # 42-1, 42-5, and 42-10).  Plaintiffs have also attached a 102-page accounting of the damages owed to them by Defendants. (Doc. # 42-4).

Having reviewed these documents and other filings, the Court has determined that Plaintiffs have sufficiently proven their damages in this case without the need for a separate hearing on damages.  Their Motion (Doc. # 42) will accordingly be **granted**, and Judgment will be entered in their favor.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendants' Motion to Dismiss Entry of Default (Doc. # 38) is **DENIED;**

(2) Plaintiffs' Motion for Default Judgment (Doc. # 42) is **GRANTED**;

(3) This matter is **DISMISSED and STRICKEN** from the Court's active docket; and

(4) A separate **JUDGMENT** shall be filed contemporaneously herewith.

This 30th day of March, 2022.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\ORDERS\PikeCivil\2020\20-36 MOO re Default.docx